Reuben D. Nathan, Esq. (SBN 208436)
Email: *rnathan@nathanlawpractice.com*
NATHAN & ASSOCIATES, APC
600 W. Broadway, Suite 700
San Diego, California 92101
Tel:(619) 272-7014
Facsimile:(619) 330-1819

Ross Cornell, Esq., APC (SBN 210413)
Email: *ross.law@me.com*
111 W. Ocean Blvd., Suite 400
Long Beach, CA  90802
Phone:  (562) 612-1708
Facsimile: (562) 394-9556

Attorneys for Plaintiff
KENNETH HARRISON and the Proposed Class

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH HARRISON, an individual on behalf of himself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>GENERAL NUTRITION CENTERS, INC.; GNC HOLDINGS, INC. and DOES 1 through 25, inclusive.<br><br>Defendants. | Case No:  3:16-cv-03086<br><br>Judge: Hon. William Q. Hayes<br>Filed: December 23, 2016<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Date: June 5, 2017<br>Judge: William Q. Hayes |

1

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION:

Plaintiff Kenneth Harrison (hereinafter the "Plaintiff") is a resident of San Diego County and a customer of Defendants General Nutrition Centers, Inc. and GNC Holdings, Inc. (collectively referred to herein as "GNC" or "Defendants"). (First Amended Complaint ("FAC") ¶¶ 12, 14 [ECF No. 05]).  In reliance on the misleading comparative reference prices advertised by GNC, Plaintiff has purchased products from GNC's website and/or through GNC's retail stores that honor GNC's online "sales prices" on multiple occasions, up to and including the date of his last such purchase on or about November 26, 2016.  FAC ¶¶ 12, 13.  Plaintiff believed the facts represented by GNC, i.e. that he was getting a steep discount off the regular price of the products. FAC ¶ 13.  In fact, Plaintiff did not receive a discount at all and paid more than he would have paid if he purchased the products on the same day and time from GNC's competitors. *Id.* The "Regular Prices" advertised by GNC were purely fictional, and were intended to induce and did induce the Plaintiff into purchasing the products under the false understanding that he was paying substantially less than the prevailing market rate.  *Id.* In fact, the Plaintiff paid more than the prevailing market rate, and GNC's supposed price reduction was a sham.  FAC ¶¶ 4, 11, 13, 40.

Plaintiff seeks relief on behalf of himself and a Proposed Class of consumers deceived by GNC's former price comparison scheme.  The FAC identifies a specific advertisement by GNC for Nature's Best Isopure Zero Carb Creamy Vanilla 7.5 lbs., a product Plaintiff purchased at an asserted "Sale Price" of $139.99, supposedly discounted from GNC's "Regular Price" of $189.99.  FAC ¶¶ 6, 7.  The FAC goes on to state that that "[a]t no time within the three months preceding the advertisement has GNC or have

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

any of GNC's competitors advertised or sold Nature's Best Isopure Zero Carb Creamy Vanilla 7.5 lbs. for the prices indicated by GNC as the regular price for that product." FAC ¶ 8.  The FAC further alleges that Plaintiff relied on GNC's representations about the "regular price" and that Plaintiff would not have purchased the product absent the former price comparison set forth in the advertisement.  FAC ¶¶ 11-13, 40, 53.

GNC now moves this Court for an order dismissing the FAC's three causes of action under FRCP 12(b)(6), arguing that (1) the FAC lacks facts sufficient to support fraud causes of action and that (2) the product Plaintiff purchased in reliance on GNC's deceptive advertisement is insufficient to support class-wide relief regarding products he did not purchase.  Motion to Dismiss ("MTD") 1:21-2:4 [ECF No. 12-1].  GNC also moves to dismiss the class action allegations under FRCP 12(b)(1) because (3) the FAC fails to identify all the products GNC sold via its former price discount practices and (4) the products GNC sold via its former price discount practices were not "substantially similar" to the product Plaintiff purchased.

For the reasons set forth herein, GNC's motion should be DENIED or, alternatively, Plaintiff should be granted leave to amend.

## II.    STATEMENT OF LEGAL AUTHORITY

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir.1988).  In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*,

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990).   The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party.   *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir.1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir.1995).

To survive a motion to dismiss, plaintiff's complaint must "contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*.   Legal conclusions may provide a framework for a complaint, but "they must be supported by factual allegations." *Id*. The court will assume the veracity of well- pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. This plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully" but "is not akin to a probability standard." *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "'A claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Johnson*, 793 F.3d at 1007 (quoting *Iqbal*, 556 U.S. at 678).

4

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### III.   <u>ARGUMENT</u>

#### A.   *The FAC Satisfies the Heightened Pleading Standards of FRCP Rule 9(b)*

Contrary to GNC's assertions, the FAC adequately identifies the circumstances surrounding GNC's misleading former price comparison practices.  In *Yumul v. Smart Balance, Inc.* 733 F.Supp.2d 1117 (2010), the court granted a motion to dismiss false advertising allegations brought pursuant to the UCL, FAL and CLRA.  The *Yumul* court cited *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009), which reasoned that Rule 9(b)'s standard was not satisfied where the operative complaint failed to specify the advertisement, failed to specify when the plaintiff was exposed to the advertisement, failed to identify which advertisements were material, failed to specify which sales material plaintiff relied upon in making his purchase decision, and failed to allege how the underlying misrepresentations were communicated to him.  Like *Kearns*, *Yumul* involved a complaint that was devoid of facts deemed critical under FRCP Rule 9(b), such as the date of purchase and the medium through which the misrepresentations were conveyed to the plaintiff.

The FAC in the instant case satisfies each of the concerns that gave rise to dismissals in *Kearns* and *Yumul*.  The specific advertisement relied upon by Plaintiff has been identified.  FAC ¶ 6.  The specific advertisement that was material to Plaintiff's purchase is set forth and described in detail.  *Id.*  The timeframe in which Plaintiff was exposed to the advertisement is identified.  FAC ¶ 12.  Plaintiff herein has fully identified the conduct and circumstances giving rise to his claims, the date of purchase, and the medium through which the misrepresentations were conveyed (the internet).  *Id.*  And while GNC may prefer a more detailed recitation of the "who, what, when, where, and how" of the misconduct charged, the FAC meets the pleading standards in this regard. The FAC makes plain what, when, where and how the offending advertisements were

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

presented: online at *www.gnc.com* on a date certain with a specific example provided. *Id.* As for the "who" element, the FAC is clear that GNC ran the ad. FAC ¶¶ 3 - 6, 8, 10. Accordingly, none of the concerns giving rise to the orders for dismissal in *Kearns* and *Yumul* are present in the instant case, and the FAC satisfies the special pleading requirements of Rule 9(b).

**B.** ***The First Cause of Action for Violations of the Consumer Legal Remedies Act and Third Cause of Action for Violations of the UCL are Adequately Plead***

The CLRA and UCL causes of action are set forth in detail in the FAC. The CLRA claim identifies each subsection of the statute GNC has violated and the reason therefore. FAC ¶¶ 35-39. The UCL claim properly specifies the unlawful, unfair and misleading advertising prongs alleged against GNC. FAC ¶¶ 61-67. GNC's challenge to the CLRA and UCL causes of action rests entirely on its argument re: FRCP Rule 9(b) and the heightened pleading requirement. Those arguments have been addressed, *supra*.

**C.** ***The Second Cause of Action under the False Advertising Law is Adequately Plead***

To state a claim for violation of California's false advertising laws, Plaintiff need only allege that Defendants disseminated advertising that is false, misleading *or* "has a capacity, likelihood or tendency to deceive or confuse the public," and that reasonable consumers are likely to be deceived by Defendants' advertising. *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008). The FAC includes the required allegations. FAC ¶¶ 47, 53, 67. In determining whether a statement is misleading under the FAL, the primary evidence is the advertising itself. *Colgan v. Leatherman Tool Grp*.,

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Inc.*, 135 Cal. App. 4th 663, 679 (2006), quoting *Brockey v. Moore* (2003) 107 Cal.App.4th 86, 100.  The FAC in the instant case includes a copy of the deceptive advertisement that gave rise to the Plaintiff's purchase.  FAC ¶ 6.  Accordingly, despite GNC's preference for a more detailed recitation of the details of Plaintiff's false advertising, Plaintiff has already provided the most relevant and primary evidence – the advertisement itself.

The Ninth Circuit has recently held that "all a consumer need allege to establish standing to bring a UCL or FAL claim is that (1) the defendant made a false representation about a product, (2) the consumer purchased the product in reliance on the misrepresentation, and (3) he would not have purchased the product otherwise."  *Hinojos*, 718 F.3d at 1109.  The FAC satisfies these pleading requirements.  Accordingly, the FAC alleges all that is necessary to state valid claims; Plaintiff has adequately alleged that GNC's reference price advertising "has a capacity, likelihood or tendency to deceive or confuse the public."  *Williams*, 552 F.3d at 938.

### D.     *GNC's Misleading Former Price Comparisons are Substantially Similar Across the Variety of Products it Advertises*

In attacking Plaintiff's standing to pursue relief on behalf of the Proposed Class, GNC moves to dismiss under FRCP Rule 12(b)(1) on the grounds that Plaintiff cannot seek relief regarding products he did not purchase.  Defendant's argument in this regard is a red herring intended to obfuscate the issues and confuse the Court.  The case law is clear in this area of law.  The relevant standards for determining whether misleading former price comparison practices can be challenged in a class action where the products subject to the practice differ were addressed in *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012).  The *Miller* court explained that, in cases "[w]here

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

product composition is less important," courts have modified the substantial similarity approach slightly, focusing more on "whether the alleged misrepresentations are sufficiently similar across product lines." See *Miller*, 912 F. Supp. 2d at 869 (emphasis added) (citing *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 WL 94265, at *1–3 (N.D. Cal. Jan. 5, 2010)).

For example, in *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012), the plaintiff alleged that the "All Natural" labels on Jamba Juice smoothie kits were deceptive. *Id.* at 1001. The plaintiff had only bought two of many flavors of the kits. *Id.* However, the court held that the plaintiff had standing to bring claims on behalf of purchasers of the other flavors because the same alleged misrepresentation was on all of the smoothie kits regardless of flavor, all smoothie kits were labeled 'All Natural,' and all smoothie kits contained allegedly non-natural ingredients. *Id.* at 1006. The court found it particularly important that the labels remained consistent across the varying products.

Similarly, in *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012), the plaintiffs alleged the defendant made misrepresentations regarding the "natural" quality of ice cream ingredients. *Id.* at 13. The court found the plaintiffs had standing to sue based on flavors of ice cream they did not purchase because many of the contested ingredients were the same across all of the ice creams at issue and their labels were nearly identical. *Id.* Some labels stated "All Natural Flavors" while others stated "All Natural Ice Cream." *Id.* The court stated, "[t]hat the different ice creams may ultimately have different ingredients is not dispositive as [the plaintiffs] are challenging the same basic mislabeling practice across different product flavors." *Id.*

Although the products in *Jamba Juice* and *Astiana* were of the same type and here,

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

the products vary like in *Miller*, this case is more analogous to *Jamba Juice* and *Astiana*. Here, as in *Jamba Juice* and *Astiana*, the differences across the products are of little importance to the alleged misrepresentations.  In *Jamba Juice* and *Astiana*, the plaintiffs alleged the labels misrepresented some of the products' ingredients and many of those ingredients overlapped regardless of the products' varying flavors.  In *Miller*, however, the differences between the products were far-reaching and material.  The products, their names, uses, and ingredients, and the target purchasers all varied.

Here, Plaintiff does not allege that his claims depend on what type of product a consumer purchased from GNC; it is immaterial for the purposes of his claims whether a a member of the Proposed Class purchased protein powder versus vitamins, so long as the item was the subject of a misleading comparative former pricing advertisement. Plaintiff's allegations do not relate to the exact prices or specific characteristics of the underlying products, which are likely to vary by product.  Rather, his claims relate to the misleading content of the advertisements, i.e., the juxtaposition of two prices, one higher than the other, the terms "Regular" and "Sale," and the fact that the supposed "Regular" prices have been consistently grossly overstated.  Moreover, all of the products are marketed to the same consumers, i.e. GNC shoppers.  Thus, product composition is of little importance and the similarity amongst the purported misrepresentations is most important, such as in *Jamba Juice* and *Astiana*.

Accordingly, contrary to GNC's assertions, the relevant inquiry is *not* whether products subject to its misleading comparative former price advertisements are 'substantially similar' to the products Plaintiff did purchase.  Rather, the focus of inquiry is whether GNC's practice of making misrepresentations in the form of deceptive former price comparisons on its website is substantially similar across a widely varying product line.  Looking to the alleged misrepresentations, they are essentially identical, and also

9

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

analogous to *Jamba Juice* and *Astiana*.  The advertisements are substantially similar because the characteristics and format that Plaintiff complains of remain consistent across all such advertisements.

### E.    *The Court Should Grant Leave to Amend*

On or about January 30, 2017, Plaintiff amended his complaint to include a claim for damages under the CLRA [Docket No. 5].  Accordingly, the present motion is the Defendant's first challenge to Plaintiff's Complaint.  In the event the Court finds deficiencies with Plaintiff's First Amended Complaint, Plaintiff requests leave to amend to provide additional facts, including but not limited to facts that will identify contemporaneous competitor pricing and examples of the prevailing market rates that would further substantiate Plaintiff's false price discount allegations and facts that would identify other categories of products subject to GNC's false price discount advertising practices.

Respectfully submitted,

Dated:  May 22, 2017                    **LAW OFFICES OF ROSS CORNELL, APC**

                                        By:    /s/ Ross Cornell
                                               Ross Cornell, Esq.,
                                               Attorney for Plaintiff,
                                               KENNETH HARRISON
                                               and the Proposed Class

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**